UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JIMMY LEE KING,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL,<br>**Acting Commissioner of Social Security,**<br><br>　　　　　Defendant. | Civil Action No. 18-cv-11426-DJC |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                                      June 18, 2019

## I.     Introduction

Plaintiff Jimmy Lee King ("King") filed an application for supplemental security income ("SSI") with the Social Security Administration ("SSA") on September 14, 2012. R. 11.[1] Pursuant to the procedures set forth in the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3), King brought this action for judicial review of the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of the SSA ("the Commissioner"), issued by an Administrative Law Judge ("ALJ") denying King's application for SSI benefits on April 28, 2017. Before the Court are King's motion to reverse and remand the ALJ's decision, D. 11, and the Commissioner's motion

---

[1] "R." refers to citations to the administrative record filed manually on August 8, 2018. See D. 1.

to affirm that decision, D. 14. For the reasons discussed below, the Court DENIES King's motion, D. 11, and ALLOWS Commissioner's motion, D. 14.

## II. Standard of Review

This Court may affirm, modify, or reverse a decision of the Commissioner. 42 U.S.C. § 405(g). Such review, however, is "limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (citing Manso-Pizarro v. Sec'y of Health and Human Servs., 76 F.3d 15, 16 (1st Cir. 1996)). The ALJ's findings of fact are conclusive when supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the Commissioner's] conclusion." Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

## III. Relevant Factual and Procedural Background

King was 50 years old when he ceased working on April 30, 2012. R. 402-03; D. 13 at 19. He previously worked as a bricklayer and construction worker for the City of Boston. D. 13 at 21-22. On September 14, 2012, King filed an application for SSI benefits, alleging disability due to affective disorder, anxiety-related disorder and alcohol abuse in sustained remission. R. 11; D. 13 at 19. The SSA initially denied King's application for benefits. R. 11. King subsequently requested a hearing and an ALJ found that King was eligible for benefits. Id. He received SSI benefits thereafter. Id.; D. 15 at 2-3.

   1.   *SSA Denies SSI Benefits Due to Excess Resources*

On June 11, 2014, SSA issued a notice to King stating that he was owed $14,940 in back payments for the time period between October 2012 and June 2014. R. 150. The next day, June 12, 2014, the SSA retracted the aforementioned notice and stated that King was instead owed $595 in back payments for the period from December 1, 2013 through April 30, 2014. R. 163. SSA

2

also stated that King was ineligible for SSI benefits from October 1, 2012 to November 30, 2013 and from May 1, 2014 forward. Id. Specifically, SSA noted that King's excess resources originated from the following sources: approximately $50,000 in "other" income in 2013,[2] R. 171-72 and worker's compensation proceeds in 2012. D. 164. On June 26, 2014, SSA sent a third notice to King stating that his resources exceeded the statutory SSI limit between November 2013 through April 2014 and, as a result, he was ineligible for SSI benefits from December 1, 2013 through April 2014. R. 175; see R. 11.

King filed a motion for reconsideration of SSA's back pay determination on July 15, 2014. R. 199. SSA, in turn, requested that King provide receipts and other documentation concerning how he spent his excess resources, including the $50,000 in pension payouts and worker's compensation benefits, during a conference with the SSA on September 16, 2014. R. 200-201. During this conference, King disclosed that he had also received nearly $13,000 in tax refunds for the 2013 tax year in April of 2014. R. 201. King failed to submit the requested documentation and, as a result, SSA affirmed the denial of SSI benefits on October 8, 2014. R. 202.

2.  *Proceedings Before the ALJ*

On November 18, 2014, King requested a hearing before an ALJ regarding whether his resources exceeded the statutory limit for receipt of SSI benefits. R. 205-208. At the hearing on February 27, 2017, the ALJ heard testimony from King's counsel, King and his wife, Mikkayla King, regarding their total resources during the relevant period. R. 394-433. King submitted bank records showing cash withdrawals totaling approximately $30,000. R. 12-13. Although King contended that he used these funds to pay for food, clothing and bills, he did not proffer documents

---

[2] SSA later clarified that the $50,000 in "other" payments constituted funds King received as part of pension payouts from his work with the City of Boston. See R. 200, 202.

3

to support these assertions. R. 13, 416. King also explained that he deposited some of the money into a savings account. R. 12, 421-423. The bank records associated with the savings account, however, did not provide additional information regarding how King spent the funds and did not cover the relevant time period. R. 12-13. The ALJ agreed to hold the record open for two weeks after the hearing to allow King to submit additional information regarding his income and cash withdrawals of $30,000, including tax returns from 2012 to 2016, savings account statements and additional checking account statements. R. 424, 432. King, however, only submitted savings account statements from 2016, R. 13, a copy of his tax refund check issued in 2014, R. 147, and a copy of a March 17, 2017 letter from his mother regarding a loan of $7,000, D. 13 at 29-30.

3. ALJ Findings

On April 28, 2017, the ALJ affirmed SSA's decision denying SSI benefits because King's resources exceeded the statutory countable resources limit for SSI recipients and he did not produce sufficient evidence to rebut this conclusion. R. 12-13. In reaching this decision, the ALJ noted that King failed to account for how he spent or otherwise disbursed $30,000 of the nearly $63,000 in income he had received. R. 13 (explaining that "the financial records provided by the claimant fail to document the whereabouts of nearly thirty thousand dollars of funds that were withdrawn from [King's] bank account"). The ALJ further concluded King was ineligible to apply for SSI benefits for a period of thirty-six months beginning the month after the "inappropriate transfer" of resources took place. Id. In implementing this period of ineligibility, the ALJ noted that an individual "may be ineligible for receipt of SSI benefits for up to 36 months" if he or she "transfers a resource or sells it for less than it is worth." R. 13. The ALJ determined this period of ineligibility by consulting the SSA Programs Operations Manual System ("POMS") SI 01150.111. R. 13. POMS SI 01150.111 instructs the ALJ to "[d]etermine the total . . . value of

4

any resources transferred by either member of the couple since the look-back date . . . [t]hen, divide the uncompensated value by the [Federal benefit rate]" to calculate the proper period of ineligibility. POMS SI 01150.111(B). The ALJ thus divided the $30,000 of total unaccounted resources by King's average monthly SSI payment, and determined that the maximum ineligibility period of thirty-six months applied. R. 13.

King appealed to the SSA's Appeals Council on April 28, 2017. R. 4. The Appeals Council ("AC") denied the request for review of the ALJ's decision in a letter dated May 7, 2018. R. 4-7.

4. *Present Action*

King instituted this matter on July 9, 2018, D. 1, and has now moved to remand to the SSA, D. 11. The Commissioner has moved to affirm the decision of the ALJ. D. 14.

IV. **Discussion**

King challenges the ALJ's decision denying SSI benefits on the grounds that the ALJ allegedly (1) ignored substantial testimonial and documentary evidence concerning his income and spending during the relevant period, D. 13 at 5; and (2) erred in relying upon 20 C.F.R. § 416.1246 in instituting a thirty-six month bar on King's eligibility to apply for SSI benefits, D. 13 at 6.

A. **ALJ's Consideration of Proffered Evidence Concerning King's Resources**

King alleges that the ALJ failed to consider proffered evidence and testimony in concluding that King exceeded the statutory resource limit. D. 13 at 5. Specifically, King contends that the ALJ did not consider: (1) earnings that bear upon King's financial status during the relevant time period; (2) documentation of rent owed and paid per month; and (3) King's testimony regarding the high cost of living in Boston and the use of cash to pay for food, clothes and bills. D. 13 at 5-6. King further contends that the ALJ did not properly explain how she reached the conclusion

5

that $30,000 had not been accounted for as no standard was referenced in the ALJ's calculations. Id.

"A claimant is required to provide evidence that he . . . meets the financial requirements [for SSI eligibility]." Morales v. Colvin, No. 14-CV-5420, 2016 WL 3033723, at *4 (E.D.N.Y. May 26, 2016); see 20 C.F.R. § 416.200 (requiring that a claimant submit all requested documentation to the ALJ during the assessment of eligibility for SSI benefits).³ Resources are defined as "'cash or other liquid assets or any real or personal property that an individual owns' and 'could convert to cash to be used for his or her support or maintenance.'" Rashed v. Astrue, No. 07-CV-2726, 2010 WL 3036795, at *3 (E.D.N.Y. July 30, 2010) (quoting 20 C.F.R. § 416.1201(a)).⁴ Where, as here, a claimant withdrew resources that exceeded the statutory limit, the burden is on the claimant to "demonstrate that the [funds] were spent down or transferred rather than simply converted from one liquid source to another, or converted for the purpose of establishing eligibility." Schenck v. Comm'r of Soc. Sec., No. 14 CIV. 1445, 2015 WL 4393077, at *8 (S.D.N.Y. July 16, 2015) (concluding that plaintiff failed to provide sufficient documentation as to how she spent down resources in excess of the statutory limit for SSI beneficiaries); see Morales, 2016 WL 3033723, at *4 (explaining that "'[e]ven if a claimant's resources exceed the [statutory] limitation . . . the SSA may nonetheless find the claimant to be eligible if he . . .

---

³ SSA regulations provide that to meet the financial qualifications for SSI benefits, the total resources of an eligible individual and his spouse may not exceed $3,000 in any given month. 20 C.F.R. § 416.1205. SSI benefits are intended to provide "a minimum level of income" for those who are disabled and do not have substantial income or resources. 20 C.F.R. § 416.110.

⁴ Pension funds and worker's compensation benefits are considered income and are included in the calculation of a claimant's resources. 20 C.F.R. § 416.1121(a). Ineligibility begins as of the first day of the month in which a claimant's countable resources exceed allowable limits. See 20 C.F.R. § 416.200 *et seq.*

establishes by credible evidence that those resources have been 'spent down,' that is, that any excess above the resource limit has been eliminated' by the time of the SSA's final determination" (internal quotation marks omitted) (quoting Rashed, 2010 WL 3036795, at *3)).

King failed to account for at least $30,000 in cash withdrawals. The ALJ requested copies of King's tax returns from 2012 through 2016 as well as a copy of recent bank statements from the savings account in which he had allegedly deposited money he had withdrawn from his primary checking account. R. 405-406. King submitted a statement for the savings account, but it concerned transactions from 2016 and did not support a finding that King spent down nearly $30,000 withdrawn as cash in prior years. R. 12-13. The requested tax returns from 2012 through 2016 were not submitted to the ALJ, except for a copy of King's 2014 tax refund check issued in $12,966. R. 147. The ALJ considered these documents, including "a number of receipts, banking statements, and other documentary evidence" submitted by King before and after his hearing. R. 12. The ALJ concluded, however, that the SSA did not err in denying King SSI benefits given "the absence of sufficient corroborative evidence regarding the claimant's appropriate disbursement of his excess resources." R. 13.

Other courts have upheld SSI ineligibility determinations where the claimant failed to account for the spend-down of excess cash. In Morales, the court considered whether a claimant was correctly deemed ineligible for SSI benefits because he failed to account for $30,000 in withdrawn cash. Morales, 2016 WL 3033723 at *2. There, the claimant was aware that the ALJ required additional documentation to corroborate his spend-down and the ALJ granted an extension for the submission of these documents. Id. at *4-5. The claimant failed to submit the requested documents and the ALJ upheld his determination of ineligibility. Id. at *5 (noting that "plaintiff has failed to provide any good reason justifying his failure to obtain and present this

information to the ALJ during the prior proceeding"). Similarly, in Rashed, a claimant was deemed ineligible for SSI benefits for failure to produce documentation that would corroborate his purported spend-down of excess resources. Rashed, 2010 WL 3036795 at *4 (stating that "[p]laintiff did not meet his burden to counter the ALJ's findings and prove that he had disposed of [cash from a settlement] before the SSA reached its final decision"). King has similarly failed to produce corroborating evidence of his spend-down and has not, therefore, met his burden under 20 C.F.R. § 416.200.

The Court concludes here that the ALJ did not ignore documentary and testimonial evidence. Rather, the record before the ALJ indicates that King's income exceeded the statutory limit and he failed to proffer sufficient documentation of his spending, including by failing to account for nearly $30,000 in cash withdrawals. Accordingly, King failed to provide evidence that he satisfied the financial requirements for SSI eligibility and, as a result, the ALJ did not err in affirming the denial of SSI benefits.

### B. ALJ's Determination of Ineligibility for SSI Benefits Was Not in Error

King also challenges the ALJ's reliance on 20 C.F.R. § 416.1246 in implementing a period of SSI ineligibility as a result of King's failure to account for nearly $30,000 in cash withdrawals. R. 13. Section 416.1246 states, in relevant part:

> [t]ransfer of a resource for less than fair market value is presumed to have been made for the purpose of establishing SSI … eligibility unless the individual (or eligible spouse) furnishes convincing evidence that the resource was transferred exclusively for some other reason. . . .  The burden of rebutting the presumption that a resource was transferred to establish SSI or Medicaid eligibility rests with the individual (or eligible spouse).

20 C.F.R. § 416.1246(e). See Franklin v. Colvin, No. 12-CV-6298, 2014 WL 4494477, at *3 (E.D.N.Y. Sept. 12, 2014) (applying 20 C.F.R. § 416.1246 and explaining that "[i]f it is

determined that the resources were given away for less than fair market value, then there is a presumption that it was for the purpose of establishing SSI eligibility").

In concluding that King's uncorroborated spend-down rendered him ineligible for SSI benefits for thirty-six months, the ALJ cited Section 416.1246 and explained that an individual who "transfers a resource or sells it for less than it is worth . . . may be ineligible for receipt of SSI benefits for up to thirty-six months. The relevant period of ineligibility is based upon the value of the resource transferred." R. 13. Citing POMS SI 01150.111 (computing the period of ineligibility), https://secure.ssa.gov/poms.nsf/lnx/0501150111 (last visited June 18, 2019), the ALJ relied upon the $30,000 figure of unaccounted-for funds and determined that King was "ineligible for SSI benefits for a period of thirty-six months beginning the month after the inappropriate transfer took place." Id. Although the ALJ did not provide the month by which this retrospective bar was triggered, the bank statements that King submitted reveal large cash withdrawals as early as January 2013, see R. 117-21 (indicating in bank statements provided to the ALJ that King withdrew over $3,000 from a checking account in January 2013); see also R. 175 (explaining that King's benefit payments totaled zero dollars between December 1, 2013 and April 30, 2014 due to his excess resources). Accordingly, the ALJ's thirty-six-month bar would have been implemented by at least February 2013, *i.e.*, the month after King's inappropriate transfers began, and concluded by February 1, 2016, *i.e.*, a year before the ALJ issued her opinion on April 28, 2017. King has not alleged that he reapplied for and was denied such benefits during this time frame or at any other time, and, as the Commissioner notes, he is now free to reapply for these benefits, D. 15 at 10. That is, whatever error King alleges the ALJ committed by relying on the $30,000 cash figure in invoking 20 C.F.R. § 416.1246(e), where, as here, any such alleged error did not prejudice King as he may now re-apply for benefits, and remand is not warranted.

9

See Torres v. Comm'r of Soc. Sec., No. 13-CV-0914 SJF, 2014 WL 4075988, at *9 (E.D.N.Y. Aug. 12, 2014) (citing Zabala v. Astrue, 595 F.3d 402, 409 (2d Cir. 2012)).

## V. Conclusion

For the aforementioned reasons, the Court ALLOWS Commissioner's motion to affirm, D. 14, and DENIES King's motion to reverse and remand, D. 11.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge